

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SHEILA C. SIMMS,

     Plaintiff,

v.                   Civil Action No. 3:14cv433

CHUCK HAGEL, et al.,

     Defendants.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 54). For the reasons set forth below, the motion will be granted.

### BACKGROUND

## I. Factual Background

### a. Official Time Request and Compromise

Plaintiff Sheila C. Simms ("Simms") was employed by the Defense Logistics Agency ("DLA"), a component of the Department of Defense, from 1982 until early November 2008. First Amended Complaint ("FAC"), Docket No. 15, at 1-2. In 2000, Simms became medically restricted when she pulled on a locked door and injured her shoulder and arm. Wolfe Declaration, Docket No. 55-2 at ¶2. This restriction persisted over the years and was operative during the events at issue in 2007. Id. Simms was restricted to working for no more than 32 hours in a work week.

Id.  Because of this restriction, Simms worked eight hours a day, four days a week and was scheduled to work from Tuesday until Friday each week (thus having every Monday off).  Id.

The events relevant to the FAC begin during the week of May 14, 2007.[1]  As was usual, Simms did not work on Monday, May 14. She worked for eight hours on Tuesday, May 15.  From Wednesday, May 16 until Friday, May 18, Simms did not work and instead submitted workers' compensation forms for those three days, stating that her medical condition precluded her from working. Id. at ¶2 & p. 7.  On Monday, May 21, 2007, Simms did not report for work, as was her usual schedule.  On Tuesday, May 22, Simms worked for four hours and then took four hours of workers' compensation time.  She worked regularly from Wednesday, May 23 until Friday, May 25.  Id. at ¶ 5.

On Monday, May 21, 2007 Simms spoke with Deborah Wolfe, her supervisor, and requested that she be granted 24 hours of "official time" during which she could work on an administrative pleading in an ongoing discrimination case under the Equal Employment Opportunity Act (the "EEOC claim") that was due at the end of the week.  Docket No. 55 at ¶ 5.  In effect, Simms

---

[1] In her FAC, Simms recites interactions with supervisors and co-workers and complaints about her workplace that originate with her hiring in the 1980's and that do not have any effect on the analysis of the motion.  Only the relevant facts are set forth herein.

2

was asking to be able to spend three full work days (24 work hours) working from home on her EEOC pleading, in lieu of performing her official duties at work. She was requesting to be considered "on the job" during that time so that she would not have to take any vacation or sick time. FAC at 15.

After receiving this request, Wolfe discussed her options with her supervisor and individuals in DLA's legal department and its EEO office. She also spoke with Simms about the request. Docket No. 55-2 at 4. Eventually, Wolfe denied Simms' request because she "was concerned about the effect that Ms. Simms' absence would have on the quality of the work product being generated by DLA", particularly because Simms had been absent from work for so many days the preceding week and because there was an important deadline looming. Id.

After denying Simms' request for 24 hours of official duty time, Wolfe, for reasons neither explained nor readily apparent, proposed a compromise solution (one that was both remarkably generous and quite unnecessary in its extent) to allow Simms to work on both her EEOC pleading and her DLA assignments. As a part of this compromise, Wolfe offered Simms: an assistant to type for her, a secure Video Teleconferencing room where she

could work on her EEOC materials and store her materials,[2] an assistant to transport her materials to and from her car each day, and limited "official time" during which to work on her administrative pleading.    Simms was to provide Wolfe with periodic updates about how she was spending her time, but was permitted to use at least some "official time" each day to work on her EEOC pleadings.   Id. at 5.

Although Simms found these proposals to be inadequate, she did take advantage of some of them from May 23 until May 25. She used the Video Teleconferencing room to work on her EEOC pleading, used an assistant to transport her files to and from her car, and used the "official time" allotment to work on her EEOC pleading while at work.   She did not use an assistant to perform her typing and reported that she completed both EEOC and regular duty work during that time period.   Id. at 5.   At some point, Simms requested and received an extension from the Administrative Judge presiding over her EEOC proceeding.   She then continued to work on her EEOC pleading and her regularly assigned duties, as described, until June 1, 2007.   Id. at 5-6.

---

[2] Simms was given the option, but was not required, to work in the Video Teleconferencing room.   She was permitted to work at her normal work station as well.

4

**b. Internal Complaint and Framing the Issues**

On or about July 17, 2007, Simms filed, with the DLA, a formal complaint of discrimination pursuant to the Rehabilitation Act[3] that complained of the facts as described above. Docket No. 55-3. After receiving her complaint, DLA sent Simms a letter that identified the three administrative claims that it believed she was asserting and asked her to clarify any of the three or to add to the list. Docket No. 55-4. According to the August 6 letter, the three asserted claims, as perceived by DLA, were as follows:

> (1) You were denied reasonable accommodations on May 21, 2007 when you requested 24 hours to work from home to complete your response to the Administrative Judge for your EEOC complaint #430-2007-00020X.
>
> (2) You were denied a reasonable accommodation when you were assigned to another work station which jeopardized your safety. In addition, you considered this embarrassing due to the access area being located via the break room. This situation was stressful and painful which compelled coworkers to constantly check on you because they were aware of your disability. You allege your supervisor assigned you this type of accommodation to give her control over not allowing you to work from home for the 24 hours you requested.
>
> (3) You allege your supervisor denied your husband access to your work area to carry your files from the VTC room to your vehicle.

---

[3] 29 U.S.C. §701.

Docket No. 55-4 at 1.

On August 22, 2007, Simms replied to DLA's August 6 letter and notified DLA that its characterizations of her complaints were not correct.  Docket No. 55-5.  She specifically requested that the second claim be modified to read:

> (2) I was denied a reasonable accommodation when I was assigned to another work station which jeopardized my safety. In addition, I considered this embarrassing due to the access area being located via the break room. This situation was stressful and painful which compelled coworkers to constantly check on me because they were aware of the complexity of my disability. I allege my supervisor assigned me this type of accommodation to give her control over not allowing me to work from home for the 24 hours I requested, as retaliation because I filed DLAR-07-0000015 against her, reprisal for additional prior EEO activity against the Agency, and as an opportunity to harass me for having "hidden" physical disabilities.

Id. at 4.

She also requested that her third claim be modified to read:

> (3) I allege that my supervisor denied reasonable accommodation by directing that I not remove my personal files from the VTC room and refused to assign an Assistant to return my files to my vehicle. My supervisor then denied my husband access to my work area to carry my personal files from the VTC room to my vehicle.

Id.

Finally, she requested that a fourth claim be added, that claim read:

> (4) I allege that I am being discriminated against by my supervisor and the Agency because I continued to require reasonable accommodation, for my hidden physical disabilities following a work related injury and remained an Agency employee.

Id. at 5. She did not request any more amendments or additions to the proposed claims for resolution that DLA had provided to her.

DLA investigated Simms' allegations from October 29 until November 28, 2007. On January 9, 2009, the Report of Investigation was released. Docket No. 55-6. It identified the claims at issue as:

> (1) She was denied a reasonable accommodation on May 21, 2007 when she requested 24 hours to work from home to complete her response to the Administrative Judge for her EEOC complaint #430-2007-00020X.
>
> (2) She was denied a reasonable accommodation when she was assigned to another work station which jeopardized her safety. In addition, she considered this embarrassing due the (sic) access area being located via the break room. This situation was stressful and painful which compelled co-workers to constantly check on her because they were aware of her disability. She alleges that her supervisor assigned her to this type of accommodation to give her control over not allowing her to work from home the 24 hours as she had previously requested.

> (3) She alleges her supervisor denied her
> husband access to her work area to carry her
> files from the Video Teleconference (VTC)
> room to her vehicle (Investigative File [IF]
> pages [p] 47).

Id. at 1. The internal investigation did not reach a resolution
of Simms' claims, but instead only presented the evidence that
the Investigator was able to assemble from both sides.

### c. EEOC Complaint

After the internal review was conducted, Simms' claims were
heard by an Administrative Judge of the Equal Employment
Opportunity Commission ("EEOC"). On April 13, 2001, the
Administrative Judge issued a decision granting DLA's Motion for
Decision Without a Hearing. Docket No. 55-7. In that decision,
he identified Simms' claims as:

> alleging that she was discriminated against
> when, on May 21, [2007], she was denied a
> reasonable accommodation after she requested
> 24 hours to work from home to complete her
> response to a complaint; (2) when she was
> assigned to another work station that she
> contends jeopardized her safety and caused
> her embarrassment; and (3) when her
> supervisor denied her husband access to the
> facility to transport her files from a
> video-conference room to her automobile.

Id. at 3.

Simms appealed the Administrative Judge's grant of summary
judgment in favor of DLA to an appeals panel of the EEOC. On
August 19, 2013, the appeals panel affirmed the Administrative

8

Judge's decision granting summary judgment to DLA.   Docket No.

55-8.   The appeals panel construed Simms' claims as follows:

> Complainant alleged that the Agency discriminated against her on the bases of disability (physical) and in reprisal for prior protected activity when:
>
> 1. she was denied a reasonable accommodation when she requested twenty-four (24) hours to work from home to complete her response to an EEOC Administrative Judge in her separate EEO complaint;
>
> 2. she was denied a reasonable accommodation when she was assigned to another work station, that she claims jeopardized her safety and caused embarrassment; and
>
> 3. her supervisor denied her husband access to carry her files from a video-teleconference room to her vehicle.

Id. at 1-2.

## II.  Procedural Background

On September 19, 2014, Simms filed the initial Complaint in

this action.   Docket No. 3.   The Complaint was amended once and

the current operative complaint is the FAC.   Docket No. 15.

Although unorganized and often not entirely coherent, the FAC

appears to plead four counts against DLA.   Id. at 2-4.   Simms

seems to allege that all four counts are simultaneously

discrimination, retaliation, and failure to accommodate claims

brought under the Retaliation Act.   Rather than presenting her

claims in straightforward language, she couches them in her

statements of the facts at the beginning of her FAC.   Id.

9

Although difficult to summarize, the Court has undertaken to distill the claims to an understandable level.

In Count I, Simms alleges that she was discriminated against when Wolfe, who was her supervisor, became non-responsive and failed to respond to telephone calls or emails. Id. at 2. In Count II, Simms alleges that she was discriminated against when her worker's compensation payments were suspended from January 8, 2007 until February 12, 2007. Id. at 2-3. In Count III, Simms alleges that she was discriminated against when her request to use 24 hours of "on duty" status to work on her EEOC reply was denied. Id. at 3-4. In Count IV, Simms alleges that she was discriminated against when she was given the option to work on her EEOC reply in the Video Teleconferencing Room because that was allegedly an unsafe work environment. Id. at 4.

DLA initially sought dismissal of the FAC. Docket No. 20. The Court granted that motion in part and denied it in part. Docket No. 43. The motion was granted insofar as Deborah Wolfe and Julia Brandon, who were named as individual defendants, were dismissed because they were not proper defendants under the Rehabilitation Act. However, all original claims survived the motion to dismiss as to the department head (then Chuck Hagel, now Ashton Carter), who is the only operative defendant at this time.

DLA filed the pending motion for summary judgment. Simms responded in opposition. Docket No. 57. DLA replied in support.

## DISCUSSION

### I. Summary Judgment Standard

Under Fed. R. Civ. P. 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. f6(c). In Celotex Corp. v. Catrett[4], the Supreme Court stated that Rule 56(c) requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. In order to enter summary judgment "there can be no genuine issue as to any material fact, since a complete failure to proof concerning an essential elements of the nonmoving party's case renders all other facts immaterial." Id. at 323.

_____

[4] 477 U.S. 317 (1986)

When reviewing a motion for summary judgment, a court must interpret the facts and any inferences drawn therefrom in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Seabulk Offshore, Ltd. V. Am. Home. Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004). In order to successfully oppose a motion for summary judgment, the nonmoving party must demonstrate to the court that there are specific facts that would create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "Where...the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). The opposition in inadequate if it simply recounts the allegations of the FAC. Celotex v. Catrett, 477 U.S. at 325.

## II. Simms' Response Is Legally Insufficient

Simms' response does not provide the Court with any argument explaining why summary judgment should not be granted. Rather, it is a recitation of the facts that are presented in the Complaint. Thus, it is per se an inadequate response under Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Consequently, DLA is entitled to summary judgment on all four counts of the FAC for that reason alone. However, because Simms is proceeding

12

*pro se*, the Court will address the arguments made by DLA as alternate predicates for summary judgment.

### III. Burden Shifting Analysis Applies

There are two ways in which a plaintiff alleging claims under the Rehabilitation Act can prove discrimination, retaliation, and failure to accommodate. First, she can "survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race [or sex, color, or disability] motivated the employer's adverse employment action." Diamond v. Colonial life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). Second, a plaintiff can proceed under the McDonnell Douglas burden shifting framework. Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 57–58 (4th Cir. 1995) (applying the McDonnell Douglas burden shifting framework to Rehabilitation Act claims). Because Simms has not presented any direct or circumstantial evidence of discrimination due to her disability, she must proceed under the McDonnell Douglas burden shifting framework.

In McDonnell Douglas v. Green[5], the Supreme Court established a burden-shifting scheme for Title VII claims that first requires a plaintiff to make a prima facie showing of discrimination. Id. at 802. The specific elements of this

---

[5] 411 U.S. 792, 802–805 (1973).

prima facie case will vary with the type of claim being asserted.  If the plaintiff is able to meet this standard, the evidentiary burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its challenged employment action.  Id.  If the employer is able to meet that standard, the burden them shifts back to the plaintiff to prove that the employer's proffered explanation for the adverse employment action was pre-textual.  Id.

Therefore, to avoid summary judgment, Simms must first present enough evidence to satisfy her prima facie burden and show discrimination under the Rehabilitation Act.  If she succeeds, Hagel will have the opportunity to rebut that prima facie showing with legitimate reasons for its actions.  If he succeeds, Simms must affirmatively show that Hagel's reason for his actions was pretext.

## IV.  What Claims Does Simms Make?

It is not entirely clear what type of claims that Simms is making under the Rehabilitation Act.  She suggests that the claims are premised on a discrimination theory, retaliation theory, and failure to accommodate theory.  The basic analytical structures for each theory are explained below.

### a. Discrimination Analysis

Section 504 of the Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a

14

disability. 29 U.S.C. §504. In order to establish a _prima_ _facie_ case of discrimination under the Rehabilitation Act, a plaintiff must show: "(1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from employment or benefit solely on the basis of the disability." Doe v. University of Maryland Medical System Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995).

### b. Retaliation Analysis

The Rehabilitation Act prohibits an employer from discriminating against an employee because that employee has engaged in protected activity. 29 U.S.C. §504. In order to establish a _prima_ _facie_ case of retaliation under the Rehabilitation Act, a plaintiff must show: "(1) plaintiff engaged in protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; and (3) a causal connections existed between the protected activity and the adverse action." Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998).

### c. Failure to Accommodate

Finally, the Rehabilitation Act requires an employer to provide reasonable accommodations to employees with disabilities. 29 U.S.C. 504. In order to establish a _prima_ _facie_ case of failure to accommodate, the plaintiff must show

that "(1) she qualifies as an 'individual with a disability' as defined in 29 U.S.C. §705(20); (2) the [employer] had notice of her disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) the [employer] refused to make any reasonable accommodation." Reyazuddin v. Montgomery County, Maryland, 789 F.3d 407, 414 (4th Cir. 2015).

## V. Claims I and II: Failure to Exhaust

The Defendant argues that he is entitled to summary judgment on Counts I and II for two reasons. Docket No. 55 at 14. First, he argues that the Court lacks subject matter jurisdiction to consider these claims because Simms did not properly exhaust them at the administrative level. Id. Second, he argues that, even if Simms did exhaust her claims, she cannot establish a prima facie case because the actions of which she complains in Count I and Count II, respectively, do not constitute a "materially adverse action" under the law. Id.

Because it is clear from the record that Simms did not exhaust her remedies as to Counts I and II, this Court does not have subject matter jurisdiction over those counts.

### a. Legal Standard

If a federal court finds that is does not have subject matter jurisdiction over a case or controversy, it must dismiss the matter. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Thus, whether there is subject matter jurisdiction must be

16

addressed by the Court first. If the Court does not have subject matter jurisdiction, it cannot consider any other arguments on the issue.

It is well-established that the "Rehabilitation Act expressly incorporates the standards of the Americans with Disabilities Act (ADA). §794(d). The ADA, in turn, follows the 'powers, remedies and procedures' set forth in Title VII of the Civil Rights Act of 1964, as amended. See 42 U.S.C. §12117(a)(2000). Thus, like a Title VII plaintiff, [Defendant is] required to exhaust her administrative remedies before instituting a lawsuit." Spencer v. Ashcroft, 147 Fed. App'x 373, 375 (4th Cir. 2005).

"Before a Title VII plaintiff can bring a formal suit, [s]he must file an administrative charge with the Equal Employment Opportunity Commission [EEOC]. This charge frames the scope of future litigation. 'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'" Chacko v. Patuxent Institution, 429 F.3d 505, 506 (4th Cir. 2005) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 964, 963 (4th Cir. 1996)). "If 'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen

from an investigation thereof, they are procedurally barred.'" Id. at 509 (quoting Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)). For that reason, the "allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." Evans, 80 F.3d at 962-63. "At the same time, however, lawyers do not typically complete the administrative charges, and so courts construe them liberally." Chacko, 429 F.3d at 509.

It is "clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge." Id. In other words, "[a] claim will...typically be barred if the administrative charge alleges one type of discrimination - such as discriminatory failure to promote - and the claims encompasses another type - such as discrimination in pay and benefits." Id. Additionally, "the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." Id.

Thus, "[a] charge is acceptable only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Baiden-Adams v. Forsythe Transp., Inc., 969 F. Supp. 2d 422, 427 (E.D. Va. 2013) (internal quotations omitted). However, "if the factual

18

allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." Id. The test for determining whether the administrative charge and the complaint are "reasonably related" is whether or not a "reasonable investigation of [the] administrative charge would have uncovered the factual allegations set forth in formal litigation." Chacko, 429 F.3d at 509.

### b. Analysis

The Defendant argues that Counts I and II were not administratively exhausted before Simms brought this action in federal court. In Count I, Simms alleges that she was discriminated against when Wolfe, who was her supervisor, became non-responsive and failed to return her telephone calls or emails. Id. at 2. In Count II, Simms alleges that she was discriminated against when her worker's compensation payments were suspended from January 8, 2007 until February 12, 2007. Id. at 2-3.

As discussed in the factual summary above, the claims as presented to the EEOC were understood as:

> 1. [Simms] was denied a reasonable accommodation when she requested twenty-four (24) hours to work from home to complete her response to an EEOC Administrative Judge in her separate EEO complaint;

19

  2. [Simms] was denied a reasonable accommodation when she was assigned to another work station, that she claims jeopardized her safety and caused embarrassment; and

  3. [Simms] supervisor denied her husband access to carry her files from a video-teleconference room to her vehicle.

That understanding is consistent with the communications between Simms and DLA when Simms confirmed that she alleged discrimination in relation to the denial of her request for 24 hours to work on her EEOC reply, in relation to being assigned a workspace in the Telecommunications Room, and in relation to her husband not being permitted to move her files from her workspace to her car.

  It is clear that these claims do not allege that Simms suffered discrimination by being denied benefits for a short period of time or by having her calls and emails to Wolfe ignored.  Thus, they can only be considered properly exhausted if they are "reasonably related" to the charges pursued such that "reasonable investigation of [the] administrative charge would have uncovered the factual allegations set forth in formal litigation."  Chacko, 429 F.3d at 509.

  Count I and II are not reasonably related to the charges that Simms clarified and pursued against DLA both internally and with the EEOC.  All of the charges presented to the EEOC relate

to the denial of Simms' 24-hour request and the accommodations made after that denial in an attempt to reach a compromise (i.e. working in the Video Teleconference Room, having an assistant move her materials, etc.). Count I, on the other hand, alleges that Wolfe stopped returning Simms' emails and phone calls after Simms named Wolfe in a separate EEOC complaint that was unrelated to the instant complaint. The factual basis for Count I is entirely different than, and separate from, the factual bases for the claims investigated by the EEOC. Thus, no reasonable investigation of the charges relating to the denial of Simms' 24-hour request would have uncovered the factual allegations relating to her allegations that Wolfe stopped communicating with her following a separate EEOC complaint. Thus, she has failed to exhaust her administrative options with regards to Count I and the Court lacks subject matter jurisdiction.

Count II also is not reasonably related to the allegations stemming from the denial of Simms' 24-hour request. Rather, Count II deals only with the brief withholding of Simms' workers compensation benefits (it appears as a result of missing medical documentation.) That issue is completely unrelated to Simms' denied 24-hour request, and any reasonable investigation of that denied request could not be expected to uncover such a tangential issue. Thus, Simms has failed to exhaust her claim

as it relates to Count II's worker's compensation allegations and therefore that the Court does not have subject matter jurisdiction to consider Count II.  Counts I and II will be dismissed for lack of subject matter jurisdiction.  The dismissal will be with prejudice because nothing that Simms could do going forward would animate the Court's subject matter jurisdiction.

## VI.  Counts III and IV: Denial of Simms' 24-Hour Request

The Defendant argues that summary judgment in his favor is appropriate on Counts III and IV, whether the Court considers the case under a discrimination, retaliation, or failure to accommodate theory.

### a. Prima Facie Case

#### i. Discrimination Analysis

In order to establish her prima facie case, Simms must show "(1) that [s]he has a disability; (2) that [s]he is otherwise qualified for the employment or benefit in question; and (3) that [s]he was excluded from employment or benefit solely on the basis of the disability."  Doe v. University of Maryland Medical System Corp., 50 F.3d at 1264-65.  The Defendant's position is that Simms cannot prove her prima facie case for Counts III and IV because she cannot establish that she suffered a materially adverse employment action.

22

To establish the third element of her prima facie case, Simms must show that she suffered "some significant detrimental effect" that constituted an adverse employment action. Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). Because the Rehabilitation Act borrows its standards from the ADA, which borrows its standards from Title VII, an adverse employment action under the Rehabilitation act must adversely affect the "terms, conditions, or benefits of the plaintiff's employment." Edmonson v. Potter, 118 Fed. App'x 726, 728 (4th Cir. 2004) (internal quotations omitted). Examples of this type of action includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999).

### 1. Count III

In Count III, Simms alleges that the denial of her request to be able to spend 24 "official duty" hours working on her EEOC reply instead of completing her work assignments was an adverse employment action. The Defendant's view is that this does not satisfy the more stringent standard to which a discrimination claim under the Rehabilitation Act is held. Specifically, he points out that, although Simms' request for 24 hours of "official duty" time was denied, she was provided access to a secure room, an assistant to transport files and type, and

23

limited official duty time to work on the EEOC reply while still completing her work-related duties.[6]

Simms has not satisfied her burden of proving that she suffered an adverse employment action.   Under the discrimination prong of the Rehabilitation Act, an adverse employment action is one that affects the terms, conditions, or benefits of the plaintiff's employment.   This category is limited to serious actions, such as a discharge, demotion, or decrease in pay. Here, Simms was denied permission to use three full working days on her EEOC response while simultaneously shirking her work duties and being paid as if she was performing normally.   Simms was not asking merely to take advantage of the benefits or conditions of her employment – she was asking for extraordinary measures to be taken to allow her to complete her paperwork and she was in fact given a generous accommodation even though the extraordinary measures were refused.   The denial of Simms'

---

[6] An employee with an EEOC complaint is entitled to reasonable amount of official time to work on activities related to that complaint.   The EEOC defines a "reasonable amount of time" as "whatever is appropriate, under the particular circumstances of the complaint, in order to allow a complete presentation of the relevant information associated with the complaint and to respond to agency requests for information."   EEOC's Management Directive 110, Chapter 6, Section VIII (C)(1).   The EEOC also notes that "the actual number of hours to which complainant and his/her representative are entitled will vary, depending on the nature and complexity of the complaint and considering the mission of the agency and the agency's need to have its employees available to perform their normal duties on a regular basis."   Id.

request under these undisputed circumstances is not an adverse employment action. Summary judgment will be granted on Count III of Simms' complaint as it is considered under the discrimination framework.

### 2. Count IV

In Count IV, Simms alleges that she was discriminated against when she was given the option to work on her EEOC reply in the Video Teleconferencing Room because it allegedly was an unsafe work environment and she was embarrassed to be working in it. The Defendant argues that this "is not the type of materially adverse employment action that would support a discrimination or retaliation claim." Docket No. 55 at 22. He notes that "moving an employee from a private office to a cubicle is not considered a materially adverse employment action." Id. (citing Murray v. City of Winston-Salem, 203 F. Supp. 2d 493, 502 (M.D.N.C. 2002)). Further, he argues that Simms' regular work station was not moved and that she was free to work from her regular work station or from the Video Teleconference Room as she pleased. Id.

The decision to offer Simms the Video Teleconference Room as a workspace for her EEOC reply did not constitute a materially adverse action. First, Simms had the option of working in the Video Teleconference Room or continuing to work at her desk. Had she found the Video Teleconference Room as

undesirable as she now claims, she merely had to return to her desk and conduct her work there. Second, Defendants offered her a separate, private room in which she could work on her own EEOC action during working hours with the assistance of Defendant's employees. While this might not have been Simms' preferred option (as she wished to work on her material from home), it was a valid compromise made in an attempt to offer Simms at least some accommodation for her situation. This simply is not considered an adverse employment action for the purposes of a discrimination claim under the Rehabilitation Act. Summary judgment will be granted on Count IV of the FAC as it is considered under the discrimination framework.

Moreover, Simms has offered no proof that the Video Teleconference Room was unsafe or embarrassing, relying instead on the conclusory allegations of her complaint. Thus, even if her complaint could constitute an adverse action, DLA would be entitled to summary judgment.

### ii. Retaliation Analysis

To establish a prima facie case under a Rehabilitation act retaliation analysis, Simms must establish that: (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal connection between her protected activity and the adverse employment action. The

Defendant argues that Simms cannot establish that she was subjected to an adverse employment action.

The standard for an "adverse employment action" is different in a retaliation case than in a discrimination case under the Rehabilitation Act. In a retaliation case, a plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern v. Santa Fe Rwy Co. v. White, 548 U.S. 53, 68 (2006).

### 1. Count III

As stated above, in Count III, Simms alleges that the denial of her request to be able to spend 24 "official duty" hours working on her EEOC reply instead of completing her work assignments was an adverse employment action. The Defendant contends that this does not satisfy the more lenient standard by which a retaliation claim under the Rehabilitation Act is measured. Specifically, he points out that, while Simms' request for 24 hours of "official duty" time was denied, she was provided access to a secure room, an assistant to transport files and type, and limited official duty time to work on the EEOC reply while still completing her work-related duties.

Simms has not satisfied her burden of proving that she suffered an adverse employment action. Under the retaliation

prong of the Rehabilitation Act, an adverse employment action is one "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68. Here, Simms was denied permission to use three full working days on her EEOC response while simultaneously not discharging her work duties and being paid as if she was performing normally. No reasonable employee would have found that to be a materially adverse action because, in fact, it would have been an extraordinary accommodation. Moreover, no reasonable employee could have thought that the generous compromise offered by DLA to be something that would discourage the making of a discrimination complaint. If we have gotten to that stage in the law, the Court could find no support for it and such a rule would simply defy logic and common sense. In fact, Simms has made no showing that her request was a reasonable one in the first place. Summary judgment will be granted on Count III of Simms' FAC as it is considered under the retaliation framework.

## 2. Count IV

As stated above, in Count IV, Simms alleges that she was retaliated against when she was given the option to work on her EEOC reply in the Video Teleconferencing Room, as she alleges it

was an unsafe work environment and she was embarrassed to be working in it.   The Defendant contends that this "is not the type of materially adverse employment action that would support a discrimination or retaliation claim."   Docket No. 55 at 22. He notes that "moving an employee from a private office to a cubicle is not considered a materially adverse employment action."   Id. (citing Murray v. City of Winston-Salem, 203 F. Supp. 2d 493, 502 (M.D.N.C. 2002)).   Further, he argues that Simms' regular work station was not moved and that she was free to work from her regular work station or from the Video Teleconference Room as she pleased.   Id.

     The decision to offer Simms the Video Teleconference Room as a workspace for her EEOC reply does not constitute a materially adverse action, even under the easier-to-satisfy retaliation standard.   While a plaintiff asserting a retaliation claim must only prove that a reasonable employee would be dissuaded from making a charge of discrimination by the act, Simms cannot meet this requirement for the same reasons she cannot meet the more stringent discrimination requirement.   A reasonable employee could not and would not view DLA's actions in offering her the Video Teleconference Room to be discouraging her from reporting claims of discrimination, as they were actions taken to accommodate her request above and beyond the normal benefits of her employment.   This certainly is not an

29

adverse employment action for the purposes of a retaliation claim under the Rehabilitation Act.   Summary judgment will be granted on Count IV of the FAC as it is considered under the retaliation framework.

Finally, as explained above, Simms has offered no proof that the Video Teleconference Room was unsafe or embarrassing. DLA would be entitled to summary judgment on that alternate ground.

### b. Hagel's Proffered Legitimate, Nondiscriminatory Reason

The Defendant also argues that the Court should enter summary judgment in his favor, even if Simms could establish her prima facie case.   Docket No. 55 at 23.   Under the McDonnell Douglas burden shifting framework, once a plaintiff has carried her prima facie burden, the employer has the opportunity to rebut the plaintiff's case by establishing that there was some legitimate, nondiscriminatory reason for its actions.   If the defendant carries this burden, the plaintiff must then respond by proving that the employer's stated reason was pre-textual in order to succeed.

### i. Count III

The Defendant argues that DLA had a legitimate, nondiscriminatory reason for denying Simms' request for 24 "on duty" hours to work on her EEOC report.   Specifically, he states that Wolfe "was concerned about the effect [Simms'] absence

would have on the quality of the work product being generated by DLA.  This was of particular concern because [Simms] had, in addition to her regular Monday non-work day, missed three additional days of work during the prior week...and thus would not be in a position to meet the end of month deadline for submitting her monthly demand planner information." Id. at 23-24.  Wolfe also was concerned about "the potential legal ramifications of allowing Plaintiff to work from home while in an official duty status." Id. at 24.

Those qualify as legitimate, nondiscriminatory reasons for denying Simms' request for 24 "off duty" hours to be used on her EEOC reply.  Even if Simms could establish that the denial of this request was an adverse employment action, no reasonable jury could find that DLA and Wolfe did not have legitimate, nondiscriminatory reasons for denying this request. Specifically, Simms' continued absence likely would have caused a significant scheduling problem, especially considering the fact that DLA was facing a tight deadline on March 25th.  As Simms has presented absolutely no evidence of pretext in her complaint or response in opposition to Hagel's summary judgment motion, she cannot carry her burden of proof.  Thus, the Defendant has rebutted Simms' prima facie case (even if she had made one - which she did not) with evidence that the denial of her 24 hour request was legitimate and nondiscriminatory and

Simms has not produced any evidence of pretext. Summary judgment is thus appropriate on Count III under both the retaliation and discrimination frameworks for this alternative reason.

### ii. Count IV

The Defendant argues that DLA had a legitimate, nondiscriminatory reason for offering Simms' access to the Video Teleconference Room as a separate workspace for her EEOC work. Specifically, he states that the Video Teleconference Room "was selected because it was available during the relevant time period in late May, 2007, and was located in close proximity to Plaintiff's regular workstation." Id. at 24. He also notes that Simms "never notified Deborah Wolfe that she considered the VTC room unsafe or requested access to a different conference room." Id.

The Defendant has provided a legitimate, nondiscriminatory reason for Wolfe's choice to offer Simms access to the Video Teleconferencing Room for her work on the EEOC reply. As with Count III, Simms has presented no evidence that this proffered reason was pre-textual. Rather, she seems to argue that there were other rooms in the building that could have been used. She does not, however, establish that those rooms were available or that they were permitted to be used in such a way. Even if the rooms were available to Wolfe when she was offering Simms a work

room, the fact that Wolfe chose not to offer Simms DLA's best real estate does not establish that Wolfe's choice to offer Simms the Video Teleconference room was pre-textual. Thus, summary judgment is appropriate on Count IV on this alternative ground under both the discrimination and retaliation theory because Simms has failed to rebut Hagel's proffered legitimate, nondiscriminatory rationale.

### c. Failure to Accommodate Analysis

As stated above, a plaintiff who wishes to prove her failure to accommodate claim under the Rehabilitation Act must establish that "(1) she qualifies as an 'individual with a disability' as defined in 29 U.S.C. §705(20); (2) the [employer] had notice of her disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) the [employer] refused to make any reasonable accommodation." Reyazuddin 789 F.3d at 414.

The Defendant argues that, if Simms is to be understood as asserting a failure to accommodate claim, that theory must be rejected. He states that "the accommodations Plaintiff requested were not requested so that she could perform the 'essential functions' of her position. Rather, as Simms expressly admits, she wanted the accommodations so that she could work exclusively on her EEO administrative response in

33

lieu of performing her regularly assigned work duties." Docket
No. 55 at 26.

Accommodations must only be made to support essential job
functions. "The Fourth Circuit has explained that if a job
function bears more than a marginal relationship to the job at
issue, it is an essential job function...Essential functions
means the fundamental job duties of the employment position the
individual with a disability holds or desires." Wells v. BAE
Systems Norfolk Ship Repair, 483 F. Supp. 2d 497, 508 (E.D. Va.
2007) (internal quotations and citations omitted). In
conducting its analysis, the Court "may consider the employer's
judgment and the amount of time an employee must spend
performing the function." Id.

Here, Simms requested an accommodation (i.e. 24 hours of
"on duty" status) in order to work on a reply due in an EEOC
case she was pursuing. A reasonable jury could never find that
such an activity is an essential function of her job at DLA, as
it does not involve her position's responsibilities at all. In
fact, the request for accommodation would have kept Simms from
the essential duties of her position, as it would have kept her
out of the office with a deadline fast approaching.[7] The

---

[7] It is difficult to see how DLA could have been more
accommodating to Simms' extraordinary and really quite absurd
requests. DLA had no duty to go as far as it did for Simms.
Simms is a perpetual complainer as shown by her litany of

Defendant is entitled to summary judgment on both Counts III and IV under the failure to accommodate theory.

Moreover, DLA in fact made a generous accommodation.   That too warrants summary judgment in favor of the Defendant.

### CONCLUSION

For the reasons set forth above, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 54) will be granted.

It is so ORDERED.

_____ /s/      R E P

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date:  August  20, 2015

---

complaints harkening back twenty years.    Nonetheless,   DLA responded to this new complaint in a more than reasonable way. This case proves the adage that no good deed goes unpunished.